EAST JERSEY WATER COMPANY, complainant-appellant,

v.

CITY OF NEWARK and TOWN OF KEARNY, defendants-respondents.

EAST JERSEY WATER COMPANY, complainant-appellant,

v.

CITY OF NEWARK and TOWN OF NUTLEY, defendants-respondents.

[Argued May 28th, 1925.    Decided October 19th, 1925.]

1. In a contract between a city and a water company, giving the city the option to purchase the company's water works, a clause providing that the city, in the use of the water to be delivered or purchased, could supply inhabitants of the purchasing city and those of designated towns, but that the city should not supply public or private corporations outside of the designated territory, *held* to refer merely to the period of time covered by the option, and did not restrict the city's use of the water after it had purchased the water works of the company.

2. Legal effect should be given to a clause if it can be done without violence to settled legal rules, and is not against public policy.

3. A legislative grant to a water company to appropriate waters to public use does not confer a right upon that company to control the sale and use of water by a city which purchased the entire water works of the company.

4. The attempt of a water company, in selling its water works to a city, to restrict the sale of water to such city and other designated municipalities is beyond its powers, and violative of the public policy of the state.

On appeal from an order of the court of chancery advised by Vice-Chancellor Church, dismissing complainant's bills of complaint, reported in *96 N. J. Eq. 231.*

*Messrs. Humphrey & Sumner, Mr. John B. Humphreys* and *Mr. Frederick J. Faulks* (*Mr. Josiah Stryker,* of counsel), for the appellant.

*Mr. Jerome T. Congleton* and *Mr. Joseph G. Wolber,* for the city of Newark.

*Mr. John H. Cooper,* for the town of Kearny.

*Mr. J. Harry Hull,* for the town of Nutley.

*Mr. Frank H. Sommer* (*Mr. Merritt Lane,* of counsel), for the municipalities.

The opinion of the court was delivered by

KALISCH, J.

A motion was made to strike out the bill of complaint filed in each cause upon several grounds, which, collectively, in legal effect, rested upon the single ground of want of equity in the bill. As the same legal question was involved in both cases they were heard together by the learned vice-chancellor, who made an order in each case striking out and dismissing the bill of complaint for want of equity, and it is from these orders that appeals were taken to this court and argued together.

The bills filed by the complainant in the court below prayed for an injunction against the city of Newark, the town of Kearny and the town of Nutley to restrain the city of Newark from supplying the latter municipalities with water for municipal purposes.

The basis of the relief applied for is a contract made on the 24th day of September, 1889, between the Lehigh Valley Railroad Company, then the owner of a large part of the water supply now owned by the city of Newark and the East Jersey Water Company and the city of Newark.

The ninth clause of the contract granted an option to the city of Newark to purchase the water, water rights, dams,

reservoirs, works constructed by the water company for the purposes of the contract, with all their appurtenances, for the sum of $4,000,000, with the further provision that upon the exercise of the option by the city of Newark, the Lehigh Valley Railroad Company and the East Jersey Water Company would immediately convey by absolute conveyance to the municipality, the dams, reservoirs, sites, conduit or conduits, and all the works of every nature and kind, &c., for the purpose of supplying the water contracted for, with all their appurtenances, together with water and water rights sufficient to supply fifty million gallons daily forever, &c.

The city availed itself of the option, and the required conveyances having been made to it, it became vested with all the right, title and interest of the East Jersey Water Company to and in its water supply system, and the sources of its supply as contracted for, free and clear of all claims and demands of every person or persons whatsoever. The complainant-appellant relies for relief on a provision contained in the fifteenth clause of the contract, which provides that the city, "in the use of the water to be *delivered* or *purchased* under this contract may supply not only the inhabitants within the present or any future corporate limits of the city, but also the inhabitants of the township of Belleville, South Orange, East Orange and Clinton; but will not supply public or private corporations or persons for use outside of the territory aforesaid." The appellant's contention is that the city's use of the water before and after it became the absolute owner of the complainant's water system and sources of supply was strictly restricted to the city's own use and the use of the municipalities mentioned, by force of the very terms of this provision.

To support this contention, appellant's counsel place much stress upon the phrase "water to be delivered or purchased under this contract," and it is argued that by the use of the word "purchased" it related to a situation after the city became the absolute owner under the contract. But this does not seem to us to be logically deducible from the contract when read in its entirety. For the contract had a dual ob-

ject. One was to provide terms and conditions while there was pending an option to purchase by the city, and during which time water was delivered to it and purchased by the city of the complainant; the other to provide terms for the sale by the complainant of the water system and sources of supply to the city when the latter availed itself of the option. It is to be borne in mind that, under the option, water was to be delivered to and purchased by the city. It is quite evident that after the city became the absolute owner of the water system and the sources of supply, delivery of water and purchase thereof by the city of complainant had come to and end, and it is a permissible and consistent construction of the undertaking of the city that "it will not supply public or private corporations or persons for use outside of the territory aforesaid," that this clause has reference to the period of time covered by the option. This was but a natural and commercial-like clause to insert on behalf of the company for the purpose of protecting the business interests in the delivery and sale of water to other municipalities and to users of its water during the period that the water company remained the owner of the water and of the sources of supply and the city of Newark was obtaining the water from the company under an option of purchase, which might never eventuate. An entirely different situation would manifestly arise as to the use and disposition of the water in the city when the water company ceased to be the owner and the city became the absolute owner of all the right, title and interest of the water company to and in the water and the sources of supply.

In such a posture the canon of construction universally adopted is to give legal effect to the clause if this can be done without doing violence to settled legal rules and is not against the public policy of the state.

The learned vice-chancellor has made it quite clear that the clause, in legal effect, if applied to the status of the city's absolute ownership of the water rights formerly owned by the company, would not only render it void, because it is in restraint of trade, but also against public policy.

In *East Jersey Water Co.* v. *Board of Utility Commissioners, 98 N. J. Law 449,* this court, speaking through Chief-Justice Gummere, who, in discussing the status of the complainant and its duties (at *p. 451*), said: "That this company operates its water system for public use we have no doubt. The control of the fresh water streams within our boundaries resides in the state in its sovereign capacity as representative of, and for the benefit of, the people in common * * *. Our legislature, in the exercise of this sovereign power, has passed statutes for the conservation of the water supply of the state, in order that the rights of our people therein may be properly protected." While we recognize the right of the complainant, by virtue of its legislative grant, to appropriate the waters in question to public use and to turn them over to the city of Newark, to the extent of fifty millions of gallons daily, it is manifestly against the policy of the state, the aim of which is to conserve its potable waters for the use and benefit of its inhabitants, that if there was a surplus of water remaining after the needs of the inhabitants of the city of Newark and the municipalities mentioned in the contract are satisfied, to permit the remaining millions of gallons of water to go to waste, to the detriment and irreparable injury of the inhabitants of other municipalities in the state.

No such right as is claimed by the water company was conferred upon it by the legislature, and the attempt to exercise and enforce such claim is clearly beyond its legal power and in direct violation of the public policy of the state.

The decree in each case dismissing the complainant's bill is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, JJ. 13.

*For reversal*—None.